## REFRACTOLITE CORPORATION et al. v. PRISMO HOLDING CORPORATION et al.

District Court, S. D. New York.

March 25, 1940.

W. R. Liberman, of New York City, for plaintiffs.

Hornidge & Dowd, of New York City, for defendants.

GALSTON, District Judge.

The suit is brought pursuant to Sec. 274d of the Judicial Code, Title 28 U.S. C. Sec. 400, 28 U.S.C.A. § 400. The plaintiffs seek a declaratory judgment against the defendants in respect to their patent No. 1,902,440, issued on the application of Edwin R. Gill, Jr., to Prismo Holding Corporation as assignee for an invention relating to signs; and by counterclaim the defendants seek a declaratory judgment in respect to patent No. 2,043,-414, issued to Fred H. Korff for an improvement in markers for highways. The Gill patent was applied for on January 15, 1932 and issued March 21, 1933; the application for the Korff patent was filed July 20, 1934 and the patent issued June 9, 1936.

There seems ample proof of an actual controversy between the parties affecting their respective rights under the two patents concerning which adjudication is sought.

Claims 1, 3, 4, 6 and 7 of the Gill patent are claimed by the defendants to be infringed by the plaintiffs.

To aid automobile driving Gill devised a sign which in his specifications he says "includes any marker, signal device or mechanism which may be employed to attract attention or convey information." The specification continues, "In order that such a device be satisfactory in all places and under any circumstances it is highly desirable that it be especially responsive to light thrown upon it and this is especially desirable when the device or its surroundings may be in the dark," in order that the light from the headlight of an automobile be reflected back to the vehicle. So Gill discovered "that if a sign, or the significant portion thereof, is not merely reflecting but is reflex reflecting, the light thrown thereon will to a considerable extent be returned toward the source of the light * * *. It has been found that a brilliant reflex reflection may be procured by providing a number of small reflex reflecting elements which are preferably arranged substantially in contact with each other so as to avoid the appearance of blind or dark spots." Such elements, he states, are of transparent material, glass, and preferably in the form of spheres, cubes or cylinders, especially when associated with a reflecting medium.

Various forms of signs are described in the specification and drawings of the Gill patent, one of which consists of a rigid base or back. On this he distributes a layer of enamel. Insignia devices are then marked out on the layer of enamel. The glass spheres or cubes are embedded in the enamel, "preferably to substantially one-half the depth of the sphere". This is for the double purpose of holding the spheres in place and of securing by the conjoint action of the reflecting surface of the enamel what Gill describes as a "reflex reflecting" medium of such character that substantially any ray of light falling upon it will be reflected back in a line parallel to the approaching light.

Of the claims in issue, claims 1, 4, 6 and 7 are for a sign, and claim 3 is for a method of making a reflex reflecting surface. The validity of these claims is challenged.

It may suffice to discuss claim 1 as typical of the sign claims. The claim reads: "A sign the significant portion of which is covered with a plurality of reflex reflecting elements, and a reflecting substance covering at least about the lower half of the surfaces of the elements but leaving the upper portions of the surfaces unaffected."

Among the prior art patents is British patent No. 11,538 of 1911 to Venner. This patent discloses the employment of a plurality of substantially spherical translucent bodies to be presented in a dark or non-reflecting screen—a reflecting surface formed separately therefrom and substantially conforming to the contour of the rear portions of the translucent bodies and arranged at the back thereof and in suitable proximity thereto. Venner says: "The separate reflector may evidently be constituted by a reflecting screen common to all the translucent bodies of the sign or to sections thereof, or each of these bodies may have its own individual reflector secured in position in any suitable manner." Venner points out that his invention is not limited to any particular method of attaching the translucent bodies to the screen.

British patent No. 288,807 to Gomez relates to light reflectors and concerns a system "wherein a spherical lens of glass or translucent substance in the form of a complete sphere * * is combined with a flat disc or silvered or plated glass or backed glass or equivalent, possessing reflective qualities." Gomez clearly described the so-called principle of "reflex reflection" of Gill; Gomez had said: "This invention relates to light reflectors. It is based on the refraction and reflection of luminous rays, and concerns a system wherein a spherical lens of glass or translucent substance in the form of a complete sphere and possessing similar properties to glass is combined with a flat disc of silvered or plated glass or backed glass or equivalent, possessing reflective qualities."

After describing his improved reflector he adds: "the luminous rays coming from the opposite side to that on which the flat disc is placed converge after refraction in the spherical lens onto the silvered face of the flat disc of glass, and on being reflected therefrom, return in the same direction from which they come."

United States patent to Brown, No. 355,810, issued January 11, 1887, is for a street curb or border curb and is of interest as disclosing use of pieces of glass, by preference a circular lens, which lenses are inserted in a series of recesses or depressions within the top of the curb, and hermetically sealed in place by means of cement or concrete. The specification recites: "Upon the back of the lenses or beneath the same I place a luminous or phosphorescent paint or material, C, capable of absorbing the rays of light during the day and giving them off at night."

United States patent to Rock, No. 912,171, issued February 9, 1909, is hardly in an analogous art since it relates to pottery ornamentation and perhaps is significant only in that it shows that beads are pressed into a wet material in the manner described in the Gill patent.

United States patent No. 1,575,468, issued March 2, 1926 to Voss, is likewise not an analogous art, since it relates to an improvement in embroidery. However, it does show the art of embedding glass beads in paint.

It may be said from the foregoing that the so-called principle described in the Gill specification of "reflex reflection" is not original with Gill, for it is clearly described in the Gomez British patent, No. 288,807, and indeed must surely have been known to physicists for many years, and the means employed by Gill for effecting this "reflex reflection" are not new. British patent to Venner discloses a reflecting coating on the lower half of the sphere and while it is true that the spheres of the Venner patent are not held in place by being particularly embedded in the reflecting material, there can be no invention in causing these spheres to be embedded in the reflecting material, in view of the disclosure in Brown patent No. 355,810, patent to Schramm No. 823,445; patent to Rock No. 912,171, to Jacobsson No. 1,204,775, to Lassen No. 1,487,747, to Carlson No. 1,626,508, and to Lazarus, British patent No. 28,823 of 1911.

With so much disclosed in the art it cannot be conceded that Gill "discovered that if a sign, or the significant portion thereof, is not merely reflecting but is

reflex reflecting the light thrown thereon will to a considerable extent be returned to the source of the light".

Gill likewise believed that his contribution to the art consisted in the selection of "small, regularly shaped pieces of transparent material, such as glass". But this too was very well known in the art; nor was it new to embed part of the reflex reflecting elements so as to leave the upper surface exposed.

That Venner does not show tangential spheres may mean that his sign would not be so effective as Gill's, particularly if the portion of the background separating the spheres was not a reflective surface. But there is no restriction in claims 1, 3, 6 and 7 which limits the sign or the method of making it to the employment of contacting spheres. Claim 4 does contain the limitation "of a plurality of substantially contacting minute reflex reflecting elements". However, there can be no invention in varying the degree of separation among the spherical elements making up the sign; nor indeed has there been any proof that any advantage results in the employment of contacting elements. Clearly it would seem to call for engineering decision rather than inventive act. Nevertheless, even in an allied art such as a motion picture screen, there is such tangential contact described as, for example, in Jacobsson, Lassen and Lazarus.

In sum, I think that while no one of these prior art patents can be deemed an anticipation in itself, they force the conclusion that Gill rendered at most an engineering contribution, and the claims at issue are therefore to be held void for lack of invention.

■ Now as to the Korff patent: This invention relates to markers for highways, the specification stating the purpose to be to return rays of light emanating from the headlights of automobiles. Korff says that one of the important features of his invention resides in the joint action of the light colored marker strip with the glass or other refracting grains. Korff describes the marking of a highway with a non-metallic binder, which may be a coating of metal oxide or other paint, and embedding therein "the lower portions of spherical glass grains or particles * * * the binder forming at the same time a backing for the said spherical grains, and a lock to hold the spherical grains in place". His operation in carrying out the invention is first to coat that part of the highway to be treated with this binder or paint, and then the spherical grains are dropped on the surface so as completely to cover it. It is supposed that automobile headlights at any angle will cast their rays upon the highway, will strike the spherical grains and be refracted to their source.

It would seem that Korff has done nothing more than to position the Gill sign horizontally, fixing the marker to the roadway instead of alongside thereof. It may be noted that Korff filed his application for letters patent on July 20, 1934, and the Gill patent had issued on March 21, 1933, so that it was available to him at the time that his specification was prepared. The similarity between fig. 3 of the Korff patent and figs. 5 and 6 of the Gill patent is, of course, striking.

Plaintiff's counsel at the trial, in answer to the court's question, " * * * assuming that there is no specific instruction given in respect to horizontal positioning of the signal or sign that is described in this specification (i. e. Gill's) is it your contention that there would be invention in adapting it to a horizontal position?", admitted there would be no invention in so doing.

Korff used the same minute glass spheres and the same method of securing reflectivity. The same principle of embedment is suggested. It is interesting to note that in the file wrapper of the Korff patent, in seeking to distinguish the Gill patent, Korff's attorney argued: "The Gill patent relates to highway signs, and applicant's invention relates to highway markers. The problems of the two fields are different. In the highway sign field the signs are designated for reading purposes and are usually located at the sides or ends of roads, while a highway marker is usually located in the center of a road, or across a road, and is subject to the travel of an automobile thereon. However, we have now shown the claims to bring out more clearly the minuteness of the spherical grains or particles containing the marker. The Gill patent used 'spheres' which may be somewhat less than 1/32 of an inch in diameter * * *. The grains of applicant are preferably less than 1/1500 of an inch in diameter."

It may be said of this argument that for years highways have been known to

be marked with lines to meet the wear and tear of automobile traffic and indeed of the weather. Location of the sign, whatever its purpose be, whether to give information or serve as a caution, involves no inventive act. So too, it is an elementary principle in the field of patent law that there is no invention in changing the size of the element employed, so whether the Gill globule or crystal be increased or decreased in diameter to meet the specific needs of use, cannot be deemed an inventive act. Indeed the Patent Office examiner, commenting upon the argument of size, said: "Applicant's argument as to the minuteness of the glass spheres is not persuasive, as only a relative relation is thus set forth in the claims. The glass spheres of Gill may be said to be 'minute grains' of glass."

It would appear therefore that the Korff patent is invalid for want of invention.

The plaintiff contends that there is no actual controversy between the parties which would justify a declaratory judgment as prayed for in the defendants' counterclaim as against the Korff patent. It is clearly apparent, however, that the Refractolite process throughout is the so-called invention of the Korff patent and was so described by Korff as a witness in this cause. In substance, if not in words, the amended complaint makes the Korff patent a part of the subject matter of the suit, for the plaintiff seeks an adjudication that the marker of the Korff patent is not an infringement of the Gill patent. That the Refractolite process was claimed to be patented is asserted in a widely distributed circular of the Highway Safety Products Corporation (Plaintiff's Exhibit 9).

On September 15, 1934, after the Gill patent had issued and while the Korff application was pending, the defendant Prismo Holding Corporation, as the owner of the Gill patent in suit, granted a license to Korff. No royalty was ever paid under this license and it was accordingly canceled by the defendants on June 4, 1936. Discussions between the parties in the effort to come to some business agreement failed and on one occasion Korff told the defendant Brooks that he had made a trip around the country, had seen highway commissioners who were pleased with the Refractolite striping process and he informed Brooks that he was infringing his patent and threatened that unless he ceased marketing under the Gill patent he would send a letter to all of the highway commissioners and engineers of states, cities and counties. Defendant Brooks also testified that he had had a conference with Deas, a representative of plaintiffs, in the summer of 1938, at which Deas made the claim that the defendants were infringing the Korff patent "now being marketed by the Highway Safety Products Corporation; that I must cease that; and threatened me with sending out a letter to that effect to state officials and others who had the power of the purchase of material for the highways in this country."

Thus the record discloses ample ground for making the Korff patent the subject matter of the defendants' counterclaim for a declaratory judgment. Duro Test Corporation v. Welsbach Street Lighting Co., D.C., 21 F.Supp. 260; Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 106 F.2d 769; United States Galvanizing & P. E. Corporation v. Hanson-Van Winkle, etc., 4 Cir., 104 F.2d 856; Interstate Cotton Oil Ref. Co. v. Refining, Inc., D.C., 22 F.Supp. 678; Booth Fisheries Corporation v. General Foods Corp., D.C., 27 F.Supp. 268.

There remains for consideration the relation of the plaintiffs to the Korff patent. The record discloses in the abstract of title that the Korff patent was assigned to the Refractolite Corporation of New York, one of the plaintiffs, by instrument dated March 15, 1937, and that the Refractolite Corporation granted an exclusive license thereunder to the Highway Safety Products Corporation, the co-plaintiff.

The plaintiffs are entitled to a decree holding that the Gill patent is invalid; and the defendants are entitled to a decree sustaining their second counterclaim and holding that the Korff patent is invalid.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.